CORNELIUS W. LAWRENCE, PLAINTIFF IN ERROR, *v.* JOHN CASWELL AND SOLOMON T. CASWELL.

By the Tariff of 1846, the duty of one hundred per cent., *ad valorem*, upon brandy, ought to be charged only upon the quantity actually imported, and not on the contents stated in the invoices.

Duties illegally exacted are those which are paid under protest, and where there is an appeal to the judicial tribunals.

The Revenue Act of 1799, (1 Stat. at Large, 672,) directed that an allowance of two per cent. for leakage, should be made on the quantity of liquors which were subject to duty by the gallon. Where brandy was subjected to a duty *ad valorem*, it was no longer within the provisions of this act, and the allowance of two per cent. ceased.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the Southern District of New York.

It was a suit brought by John Caswell and Solomon T. Caswell, merchants of New York, against Lawrence, the collector, to recover an excess of duties upon brandy, paid under protest. The whole case is set forth in the bill of exceptions, which was as follows :

*Bill of Exceptions.* The counsel for the plaintiffs, after proving that the plaintiffs were partners, engaged in trade and commerce in the city of New York, further to maintain the issue on their part, gave in evidence divers warehouse entries, and withdrawal entries, and calculations of duties thereon, invoices, and gaugers' returns of certain importations of brandy, made by the plaintiffs into the port of New York, by the several vessels in the table, or statement, hereinafter set forth, particularly mentioned; which said several vessels arrived in the said port of New York at the respective dates, also in said table, or statement, mentioned; in and by which said documents it appeared that said several importations of brandy were, on the arrival thereof, respectively deposited in the public stores in said port of New York, in pursuance of the act of Congress establishing a warehousing system, approved August 6th, 1846; that upon the gauging of said several importations of brandy by the United States gaugers, made at the time of the arrival thereof respectively, the actual contents of each of said importations were found to be less than the contents stated in the invoices thereof respectively; the difference in each case between such invoice contents, and the actual contents as ascertained by the said gaugers, being specified in the said table or statement; that the said goods so imported were afterwards, from time to time, withdrawn from such public stores, and duties paid thereon by the plaintiffs to the defendant, as collector of the port of New

York, who demanded, as such duties, under schedule A of the Tariff Act of July 30, 1846, one hundred per centum *ad valorem* upon the cost of the contents of said importations as such contents were stated in the invoices thereof respectively, amounting in the whole, as also appears in said table, to the sum of $41,-658; which said duties, so exacted, were paid by the plaintiffs to the said defendants as such collector, under protest in writing, (indorsed on the withdrawal entries,) against the payment thereof, the said plaintiffs claiming that the duties should be computed not upon the said invoice contents of said importations, but upon the actual contents thereof, as shown by the aforesaid gaugers' returns, after deducting from the actual contents shown by such returns the allowance of two per centum thereon, directed by the 59th section of the Revenue Collection Act of March 2, 1799.

The following is the form of the protests referred to, and they were all alike : —

"We claim deduction for all deficiency from the quantity shipped, also two per cent. allowance for leakage as heretofore customary, and protest against the collector exacting the whole amount of the invoice.          JOHN CASWELL & Co."

The counsel for the said plaintiffs also proved that the duties so as aforesaid paid to and received by the said defendant, as such collector, were by him duly paid, at the time of the receipt thereof, into the Treasury of the United States.

The table, or statement, above referred to, contained also a specification of the excess of duty alleged by the plaintiffs to have been exacted by the defendant as such collector, upon each of the said several importations, amounting, in the aggregate, to the sum of $1,609 ; the said table, or statement, being in the words and figures following.

(The table is omitted, as not being necessary to be inserted.)

The plaintiffs' counsel then proved, that under the act of March, 1799, and from the passage of said act until the Tariff Act of July 30, 1846, took effect, it was the uniform practice in the New York custom-house, upon the entry of such importations of liquors subject to duties, to proceed as follows :

1st. The United States gaugers, after ascertaining the capacity of each cask, deducted the "outs," or number of gallons deficient, and, from the actual contents thus ascertained, made a further deduction of two per cent. on such actual contents for the allowance of leakage, directed by the 59th section of said act of March 2, 1799, and made a return to the collector, exhibiting the result.

2d. The duties were then calculated and exacted upon the

Lawrence v. Caswell et al.

net dutiable quantity so exhibited by the gaugers' return, and upon that quantity only, and without regard to any statement of quantity in the invoice.

To this evidence the counsel for the defendant objected, in due season, as inadmissible; but his honor, the presiding judge, then and there overruled the said objection, and decided that such evidence was admissible: to which ruling and decision of the said judge, the counsel for the said defendant then and there excepted.

The plaintiffs' counsel claimed to recover against the defendant the sum of $1,609, above stated, and interest thereon to the day of trial, amounting in the whole to $2,039.35.

The counsel for the plaintiffs there rested.

The counsel for the defendant then insisted that the only allowances which could be considered in this case for deficiencies in said brandy, had been provided for by acts of Congress, and had already been made at the custom-house, and that by law the plaintiffs were not entitled to recover; and he prayed the court so to charge the jury.

But the court charged the jury that the United States were only entitled to collect duties upon the importations in question upon the quantity remaining, after deducting from the actual contents ascertained and exhibited by the gaugers' returns the aforesaid allowance of two per cent. for leakage; and that the plaintiffs were therefore entitled to recover the amount so as aforesaid claimed by them.

To which charge of his honor the judge, and to every part thereof, the defendant's counsel then and there excepted.

The jury thereupon found a verdict for the plaintiffs for the sum of $2,039.35 damages and six cents costs.

And because the prayer of the said defendant, by their said counsel, and the several rulings and decisions, and instructions and charge of the said judge, and the several exceptions taken to the same, do not appear by the record of the verdict aforesaid, the defendants have caused the same to be written on this bill of exceptions, to be annexed to such record, and have prayed the said judge to set his hand and seal to the same.

Whereupon the said Samuel R. Betts, the judge before whom the said issues were tried, and the said exceptions taken, has hereunto set his hand and seal, the 6th day of February, in the year of our Lord, 1852. SAMUEL R. BETTS. [L. S.]

Upon this exception, the case came up to this court, and was argued by Mr. Crittenden, (Attorney-General,) for the plaintiff in error, and Mr. Butler, for the defendants in error.

*Mr. Crittenden,* for plaintiff in error.

I. (First point omitted.)

II. In the cases of Marriott v. Brune, and The United States v. Southmayd, (9 How. 619, 637,) cases of drainage of sugars in the course of the voyage from the place of production, this court held that the duties were to be assessed on the actual quantity or weight which arrived in the United States; and the same rule would seem to be applicable to the case of brandy.

The further question in this case, however, is, whether importers of brandy are entitled to the additional allowance of two per cent. on the actual quantity imported, which the court below directed to be made? This allowance is claimed under the 59th section of the Collection Act of 1799, (1 Stat. at Large, 672,) which is as follows: " That there shall be an allowance of two per cent. for leakage on the quantity which shall appear by the guage to be contained in any cask of liquors subject to duty by the gallon; and ten per cent. on all beer, ale, and porter in bottles; and five per cent. on all other liquors in bottles, to be deducted from the invoice quantity in lieu of breakage; or it shall be lawful to compute the duties on the actual quantity to be ascertained by tale, at the option of the importer, to be made at the time of entry."

The late Mr. Justice Woodbury, in delivering the opinion of the court in the sugar cases, above cited, refers to the above section of the act of 1799, and says: " The former cases referred to for illustration rest on their peculiar principles, and allowances in them are made by positive provisions in acts of Congress, even though the quantity and weight of the real article meant to be imported, should arrive here. Because, well knowing that the whole is not likely to arrive, and being able to fix by a general average the ordinary loss in those cases with sufficient exactness, the matter has been legislated on expressly."

The learned judge referred to these instances merely as illustrations; and it will not be here contended that the dutiable quantity of brandy in the present case is the invoice quantity, less the allowance of two per cent.; for the court will observe that the section enacts that the two per cent. is to be allowed " on the quantity which shall appear by the gauge." But, on the part of the United States, it is contended that the allowance cannot be made on importations of brandy under the *ad valorem* tariff of 1846, because the operation of the section is limited and confined to cases of specific tariffs. The law has so commanded; the words are express and positive. The allowance is to be made on liquors " subject to duty by the gallon."

Besides, the claim for the allowance cannot be maintained under the act of 1846, because it is repugnant to the principle

of that act. Thus this court has held, that imports cover only what is brought within our limits and goes into the consumption of the country. Now, as by the act the duties upon these imports are to be assessed at so much per cent. upon the *foreign value,* how can it be said that they are so assessed upon that *value* if the whole quantity actually imported is not taken into account?

Mr. Secretary Walker, in a treasury circular of 30th January, 1847, (1 Mayo, 391,) seems to have considered the 59th section of the act of 1799 in force, and directed the allowance therein mentioned to be continued. Subsequently, however, by a circular of the 24th March, 1847, he seems to have reconsidered the subject, and instructed the collectors as contended for in this paper. 1 Mayo, 360. The importations in this case were made during the time this circular was in force. See also another circular, of 31st December, 1847, *voce,* Allowances. 1 Mayo, 405.

It is therefore submitted, on behalf of the United States, that the claim for the allowance of two per cent. on the quantity ascertained by the gauge, is not sanctioned by law, and the jury ought to have been so instructed.

*Mr. Butler,* for defendants in error.

I. Upon the facts proved upon the trial, the plaintiffs in the court below were at least entitled to recover back the amount of duties exacted by the collector upon the differences between the invoice contents and the actual contents of the several importations of brandy mentioned in the record.

(a.) The cases of Marriott *v.* Brune, (9 How. 619,) and The United States *v.* Southmayd, (Id. 637,) decide,—

1st. That *ad valorem* duties, under the act of 1846, should be assessed, not upon the quantity which appears by the invoice to have been shipped, but only on the quantity which actually arrives in our ports; and

2d. That the proviso in the 8th section, "that under no circumstances shall the duty be assessed upon an amount less than the invoice value," is not in hostility with the above construction, because the proviso refers only to the price and not to the quantity.

(b.) In respect to the point now under consideration, there is no ground whatever for distinguishing the present case from the cases in 9 Howard, above referred to.

II. The plaintiffs in the court below were entitled to the further deduction of two per cent. on the actual contents of the importations in question, as ascertained and exhibited by the gaugers' returns, for the allowance of leakage directed by the 59th

section of the Revenue Collection Act of March 2d, 1799. 1 Stat. at Large, 672.

1st. By the very words of the section, "that there be an allowance of two per cent. for leakage on the quantity which shall appear by the guage to be contained in any cask of liquors subject to duty by the gallon," this allowance is to be computed and made upon the actual contents ascertained by the gauger.

2d. This allowance of two per cent., as manifestly appears by the words quoted, was not intended to cover leakage on the voyage of importation, but to cover that which will occur after the arrival of the liquor, and before its actual sale by the importer.

(a.) Leakage on the voyage was already provided for by requiring the actual contents at the port of importation, to be ascertained by the United States gauger.

(b.) In commercial language, "leakage" is an allowance granted to importers of liquors for the waste the goods are supposed to receive by keeping after their arrival and before their sale. McCulloch's Commercial Dictionary, title "Leakage," and title "Warehousing System," Eng. ed. of 1834, p. 223.

(c.) The 59th section of the act of 1799, (following in this respect the 36th section of the act of 1790, 1 Stat. at Large, 166,) conforms to this commercial sense by directing the allowance in question to be made on the quantity which shall appear by the gauge to have arrived in the United States.

See, in connection with this section, the following sections of the same act: § 21, (p. 642,) as to the duties of the surveyor. Also, §§ 37 to 43, (pp. 655, 660,) as to entry, inspection, and landing of liquors. Also act of April 20th, 1818, (3 Stat. at Large, 469,) "providing for the deposit of wines and distilled spirits in public warehouses."

3d. The 59th section of the act of 1799 is not repealed by any thing contained in the Tariff Act of 1846; but the importers of liquors are still entitled to the allowance given thereby.

(a.) There is no express repeal of sect. 59 in the act of 1846.

(b.) Repeals by implication are not favored, and are only allowed when the provisions of the old law are plainly repugnant to those of the new. 6 Bacon's Abr. title Statute D., p. 373; Dwarris on Statutes, pp. 673, 674; Wood v. The United States, 16 Pet. 362, 363.

(c.) The only part of the 59th section of the act of 1799 which is claimed to be repugnant to the act of 1846 is the clause which directs the allowance of two per cent. to be made on "liquors subject to duty by the gallon," which, it has been suggested, renders the section inapplicable to liquors imported under a law subjecting them to an *ad valorem* rate of duty.

4th. The repugnancy suggested is only apparent, and not sufficient to work the repeal of this part of the law of 1799.

(a.) There is nothing in the change from a specific duty to an *ad valorem* duty on liquors, which should abrogate the allowance of two per cent. directed by the act of 1799.

(b.) If this allowance was just and proper under specific duties, it is also equally just and proper under *ad valorem* duties.

(c.) If this allowance be not made, the importer may, under the act of 1846, be subjected to a higher duty upon liquors than that prescribed by the preëxisting Tariff Act of August 30th, 1842, contrary to the main object of the act of 1846, which, as expressed in its title, was to "reduce the duty on imports."

5th. The act of 1846 contains several provisions strongly implying an intention in its framers to retain allowances of this nature given by preëxisting laws.

(a.) The fourth section expressly provides "that in all cases in which the invoice or entry shall not contain the weight, or quantity, or measure of goods, wares, or merchandise now weighed, or measured, or gauged, the same shall be weighed, gauged, or measured at the expense of the owner, agent, or consignee."

(b.) The eighth section requires the collectors, in the particular case therein mentioned, to cause the dutiable value to be estimated and ascertained, as well as to be appraised, "in accordance with the provisions of the existing laws."

(c.) These enactments refer to and retain in force, among other provisions contained in the prior laws, the 59th section of the act of 1799, above referred to.

See report of Secretary Walker to House of Representatives, dated Dec. 30th, 1846, (Exec. Docs. of H. of R. No. 25, 2d Sess. 29th Cong.) showing it still necessary, notwithstanding the change in the mode of assessing duties, to employ weighers, gaugers, and measurers. Pages 2, 4, 5, 9; Treas. Cir. Nov. 25th, 1846, pp. 176 to 182.

6th. The Warehousing Act of August 6th, 1846, (9 Stat. at Large, 53,) extends the principle of the act of April 2d, 1818, in relation to the deposit of liquors in public warehouses, to all imported goods.

This act being passed contemporaneously with the Tariff Act of July 20th, 1845, the two should be construed together as parts of one system; and the allowances made by the act of 1799 in respect to liquors deposited in the public stores under the act of 1818, must be deemed applicable to liquors deposited under the Warehousing Act of 1846.

7th. The foregoing view has in effect been acquiesced in by the Treasury Department, and established by this court.

(a.) It was deliberately and distinctly adopted and promul-

gated by the Treasury Department in its instructions to collectors issued immediately after the Tariff Act of 1846 took effect. See instructions to the Collector of New Orleans, under date of 30th January, 1847, given at length in 9 How. 620.

(b.) This instruction was afterwards modified by the department, but the principle on which it proceeded was established as correct by the decisions of this court in Marriott v. Brune, 9 How. 619, and The United States v. Southmayd, Id. 637.

(c.) In those cases the court decided that the *ad valorem* duties under the act of 1846 should be assessed on the quantity which actually arrives in our ports. The "quantity" of liquors can be reckoned only by the measure, — the number of gallons. To take duty on the "quantity" imported is therefore to take duty on the number of gallons imported. Liquors being subject to duty by the "quantity" or number of gallons, are therefore "subject to duty by the gallon." The difference between previous laws and the act of 1846 is, that under previous laws liquors were "subject to duty by the gallon," without regard to the value of the gallon; while under the act of 1846 they are still "subject to duty by the gallon," but according also to the value of the gallon. This is a difference merely of form and not of substance, and cannot work a repeal of the former law.

(d.) The decisions of the court in 9 Howard do, therefore, control and dispose of this point, as well as the former one; and such was, at first, admitted by the Treasury Department to be its legitimate effect. See Treasury Circulars of July 5th, 1850, August 10th, 1850, and June 14th, 1851.

Mr. Chief Justice TANEY delivered the opinion of the court.

This is an action brought by the defendants in error against the collector of the port of New York, to recover certain sums of money alleged to have been illegally exacted as duties.

The defendants in error are merchants of New York, and imported a large quantity of brandy in the years 1847 and 1848, which were deposited in the public stores, under the Warehousing Act of 1846. Upon gauging these several importations, at the time of their arrival, the contents were found to be less than the quantity stated in the several invoices.

As the brandy was from time to time withdrawn by the importers, the collector demanded the duty of one hundred per cent. *ad valorem* upon the whole invoice quantity, and it was paid by the importers under protest.

The importers claimed in their protest that the duties should be computed upon the actual contents, as shown by the gauger's returns, after deducting two per cent. from such contents. And the court was of opinion, and so directed the jury, that this was

the correct mode of ascertaining the duties; and a verdict was accordingly rendered and judgment given for the amount overcharged. This writ of error is brought to revise that judgment.

Two questions arise in the case: 1st, whether the duty ought to be computed on the quantity stated in the invoices, or on the contents as ascertained by the gauger's returns: and 2dly, whether the two per cent. ought to have been deducted for leakage.

As relates to the first question, it is substantially the same with that decided by the court in the case of Marriott v. Brune, 9 How. 619. The duty of 100 per cent. *ad valorem* was chargeable on the quantity of brandy actually imported, and not on the contents stated in the invoices. This overcharge was therefore illegally exacted, and the defendants in error were entitled to recover back the amount. The judgment of the Circuit Court is in this respect correct.

But it is proper to say, in order that the opinion of the court may not be misunderstood, that when we speak of duties illegally exacted, the court mean to confine the opinion to cases like the present, in which the duty demanded was paid under protest, stating specially the ground of objection. Where no such protest is made, the duties are not illegally exacted in the legal sense of the term. For the law has confided to the Secretary of the Treasury the power of deciding in the first instance upon the amount of duties due on the importation. And if the party acquiesces, and does not by his protest appeal to the judicial tribunals, the duty paid is not illegally exacted, but is paid in obedience to the decision of the tribunal to which the law has confided the power of deciding the question.

Money is often paid under the decision of an inferior court, without appeal, upon the construction of a law which is afterwards, in some other case in a higher and superior court, determined to have been an erroneous construction. But money thus paid is not illegally exacted. Nor are duties illegally exacted where they are paid under the decision of the collector, sanctioned by the Secretary of the Treasury, and without appealing from that decision to the judicial tribunals by a proper and legal protest. Nor are they within the principle decided by the court in the case before us.

We proceed to the second point — that is, to the claim of a further deduction of two per cent.

The Revenue Collection Act of 1799, c. 22, § 59, under which it is claimed, provides, " That there shall be an allowance of two per cent. for leakage, on the quantity which shall appear by the gauge to be contained in any cask of liquo ⁓ subject to duty by the gallon."

Lawrence *v.* Caswell et al.

At the time this law passed, brandy and sundry kinds of wine were subject to a specific duty upon the gallon; but various other wines were charged with an *ad valorem* duty, not to exceed in amount a certain rate per gallon, specified in the law. And as the two per cent. deduction was made to depend on the character of the duty, and not upon the nature of the liquor imported, the brandy and wines which then paid a duty by the gallon, were entitled to it — but the wines which paid an *ad valorem* duty were not entitled. The right to the allowance did not depend upon the fact that the importation consisted of brandy or wines of a particular description, but upon the duty to which the article was subject. If it was charged by the gallon, this deduction was to be made, but otherwise if charged *ad valorem.* Afterwards, by the act of May 13, 1800, the *ad valorem* duties, which were before charged on certain kinds of wine, were changed to specific duties; and all wines were charged with duty by the gallon. And from the passage of this act until the act of 1846, all importations of liquors of any description paid a specific duty. This will account for the usage in the custom-house to allow the deduction on all liquors, as stated in the record. For, when the *ad valorem* duty on certain wines was changed to a duty by the gallon, these wines, like brandy and other wines, came within the provision in the act of 1799, and consequently were entitled to the two per cent. deduction.

So, also, when the act of 1846 changed the duty upon brandy from a specific one upon the gallon, to a duty *ad valorem*, it was no longer within the provision of the act of 1799, and consequently no longer entitled to the deduction of two per cent. The provision in the act of 1799 is not repealed; but brandy is not now within it, because it is not subject to a duty by the gallon.

It is said there is the same reason for allowing this deduction for loss by leakage, whether the duty is *ad valorem* or specific; and that it would be unjust to make any discrimination between them. But, without stopping to inquire whether this argument is well founded or not, or whether sufficient reasons may not be assigned for the difference, it is sufficient for the court to say, that the law makes the distinction. And it is not within the province of the Treasury Department or the court to decide upon the reasonableness or unreasonableness of a tariff which it is evident Congress intended to impose. The words of the law are plain. And, since brandies do not pay a duty by the gallon, they are not entitled to the deduction of two per cent.

The judgment of the Circuit Court must therefore be reversed, with costs, and a mandate issued directing it to proceed to judgment upon the principles stated in this opinion.

42*

*Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of New York, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs; and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to award a *venire facias de novo*, and to proceed therewith in conformity to the opinion of this court.