Mr. Justice Davis
delivered tbe opinion of the court:
Solomon T. Nicoll & Co., importing merchants of tbe city of New York, filed their petition in tbe Court of Claims to recover from tbe United States an excess of duties paid on certain importations of liquors, in casks, from 1847 to 1851, inclusive.
They claim that they paid full duties on the original invoices of the liquors, without regard to the leakage on the voyage, whereas they were only required to pay on the quantity contained in the casks, on their arrival at the port of New York, (Marriott v. Brune, 9 How., 619.)
As a reason for not presenting their claim to the Treasury Department for payment, they state that they omitted to protest.
The Court of Claims sustained a demurrer to this petition, .and from that decision this appeal is taken.
Two questions arise in this case:
1st. Was there any liability on the part of the Government to refund these duties prior' to the act establishing the Court of Claims?
2d. If not, has that act fixed any new liability on the Government ?
The immunity of the United States from suit is one of the main elements to be considered in determining the merits of this controversy. Every government has an inherent right to protect itself against suits, and if, in the liberality of legislation, they are permitted, it is -only on such terms and conditions as are prescribed by statute.* The principle is funda *38 mental; applies to every sovereign, power; and but for tlie protection which, it affords, the Government would be unable to perform the various duties for which it was created. It would be impossible for it to collect revenue for its support, without infinite embarrassments and delays, if it was subject to civil process the same as a private person.
It is not important for the purposes of this suit to notice any of the acts of Congress on the subject of the payment of duties on imports anterior to the act of February 26,1845. (5 Stat. L.} 727.) This act altered the rule previously in force, and required the party of whom duties were claimed, and who denied the right to claim them, to protest in writing, with a-specific statement of the grounds of objection.
Through this law Congress said to the importing merchant, you must pay the duties assessed against you; but, as you say they are illegally assessed, if you file a written protest stating wherein the illegality consists, you can test the question of your liability to pay, in a suit against the collector, to be tried in due course of law, and, if the courts decide in your favor, the Treasury will repay you; but in no other way will the Government be responsible to refund.
The written protest signed by the party, with the definite grounds of objection, were conditions precedent to the right to sue, and, if omitted, all right of action was gone. These conditions were necessary for the protection of the Government, as they informed the officers charged with the collection of the revenue from imposts of the merchant’s reasons for claiming exemption, and enabled the Treasury Department to judge of their soundness, and to decide on the risk of taking the duties in the face of the objections. There was no hardship in the ease, because the law was notice equally to the collector and importer, and was a rule to guide their conduct, in case differences should arise in relation to the laws for the imposition of duties. The allowing a suit at all was an act of beneficence on the part of the Government. As it had confided to the Secretary of the Treasury the power'of deciding in the first instance on the amount of duties demandable on any specific importation, so it could have made him the final arbiter in all disputes concerning the same. After the passage of the law of 1845 the duties in controversy were paid.
The appellants say they were illegally exacted, because it *39 was decided by this court, in Lawrence v. Caswell, (13 How., 488,) that the duties ought to be charged only upon the quantity of liquors actually imported, and not on the contents stated in the invoices; but the Chief, Justice took occasion to observe, in deciding that case, “ that where no protest was made the duties are not illegally exacted in the legal sense of the term. If the party acquiesces, and does not by his protest appeal to the judicial tribunals, the duty paid is not illegally exacted, but is paid in obedience to the decision of the tribunal (the Secretary of the Treasury) to which the law had confided the power of deciding the question.”
In view of this decision and the plain requirements of the law, how can Nicoll & Co. complain? They knew by proceeding in a certain way they could resort to the legal tribunals, and yet for a series of years they imported liquors, and paid the duties demanded without objection. They had an equal right with the Secretary of the Treasury to construe the law under which the duties were claimed, and as they chose not to appeal to the courts, they adopted the construction which the Secretary put on the law, and are concluded by his decision.
If a party who did not adopt that construction placed himself in a way to contest it, and got a decision that it was erroneous, such decision cannot inure to the benefit of Nicoll & Co., who by their conduct notified the Government, so far as they were concerned, they acquiesced in the Secretary’s construction of the law.
It may be their misfortune that they did not appeal from the Secretary’s decision ; but it is a misfortune that occurs to any party, in'a lawsuit, who refuses to appeal from the decision of an inferior court, and afterwards finds, by means of another’s litigation, that if he had appealed the decision would have been reversed. ’
If the duties demanded of Nicoll & Go. had been paid under protest, their payment, in the sense of the law, would have been compulsory; but as they were paid without protest, it was a voluntary payment, doubtless made and received in mutual mistake of the law; but in such a case as was decided in Elliott v. Swartwout, (10 Peters, 153,) no action will lie to recover back the money. And so this court has repeatedly held. (Bend v. Hoyt, 13 Peters, 268; Lawrence v. Caswell, 13 How., 488; Curtis v. Fiedler, 2 Black., 461.)
*40 It is clear, therefore, that the appellants are without remedy, unless a new liability has been imposed on the Government by the act creating the Court of Claims.
Does this act confer on the appellants any further or different lights than they had prior to its passage ? If not, there is an end to this suit.
The Court of Claims has power to hear and determine all claims founded upon any law of Congress, or upon any regulation of an Executive Department, or upon any contract, express or implied, with the Government of the Dnited States.
Conceding that this jurisdiction draws to it cases arising under the revenue laws, then it is contended, as this suit is founded on one of the tariff acts of Congress, which has been judicially interpreted so as to sustain the claim, therefore the case of the appellants is brought within the first jurisdictional clause of the act creating the Court of Claims. But this result does not follow, for if the court has decided that the appellants, if they had protested, would have been entitled to be reimbursed for the excess of duties paid by them, it has also decided, by not protesting they lost all right to ask for repayment, and there has been no law of Congress passed since this decision placing them in the position they would have been if they had protested. Neither can they invoke to their aid a regulation of the Treasury Department, which alone of all the Departments deals with the <Iuestion of duties on imports, for there is no regulation touching the subject, as is very evident from the averment in their petition, that the Treasury Department would not pay them because they omitted to protest.
Besides, if there had been a regulation of the Department on the subject, it could not affect the rights of the appellants, fox-such a regulation cannot change a law of Congress.
It is insisted, however, if this suit cannot be sustained on these grounds, it can be sustained on an implied contract springing from the obligation of the Government to refund all duties that are illegally exacted. But we have seen that these duties were not illegally exacted, were paid voluntarily, and there is no such thing as an implied promise to pay against the positive command of a statute. (Cary v. Curtis, 3 How., 236.)
Enough has been said to show that if the Court of Claims could take jurisdiction of this class of cases, its judgment was right on the merits of this particular case.
*41 But, after all, tbe important subject of inquiry is, did Congress, in creating tbe Court of Claims, intend to confer on it the power to hear and determine cases arising under tbe revenue laws'?
Tbe prompt collection of tbe revenue, and its faithful application, is one of tbe most vital duties of government. Depending, as tbe Government does, on its revenue, to meet, not only its current expenses, but to pay the interest on its debt, it is of tbe utmost importance that it should be collected with dispatch, and that tbe officers of tbe Treasury should be able to make a reliable estimate of means, in order to meet liabilities.
It would be difficult to do this, if tbe receipts from duties and internal taxes paid into the Treasury were liable to be taken out of it on suits prosecuted in the Court of Claims for alleged errors and mistakes, concerning which tbe officers charged with tbe collection and disbursement of tbe revenue bad received no information. Such a policy would be disastrous to the finances of the country, for, as there is no statute of limitations to bar these suits,* it would be impossible to tell, in advance, bow much money would be required to pay tbe judgments obtained on them, and tbe result would be that tbe Treasury estimates for any current year would be unreliable.†
To guard against such consequences, Congress has from time to time passed laws on tbe subject of tbe revenue, which not only provide for tbe manner of its collection, but also point out a way in which errors can be corrected.
These laws constitute a system, which Congress has provided for tbe benefit of those persons who complain of illegal assessments of taxes and illegal exactions of duties.
In the administration of tbe tariff laws, as we have seen, tbe Secretary of tbe Treasury decides what is due on a specific importation of goods, but if tbe importer is dissatisfied with this decision, be can contest tbe question in a suit against tbe collector, if, before be pays tbe duties, he tells the officers of the law, in writing, why he objects to their payment.
*42 And an equal provision bas been made to correct errors in tbe administration of tbe internal-revenue laws.
Tbe party aggrieved can test tbe question of tbe illegality of an assessment, or collection of taxes, by suit; but be cannot do tbis until be bas taken an appeal to the Commissioner of Internal Revenue. If tbe Commissioner delays bis decision beyond tbe period of six months from tbe time tbe appeal is taken, then suit may be brought at any time within twelve months from tbe date of tbe appeal. (14 Stat. L., p. Ill, amendment to § 44, § 19, on p. 152.) Thus, it will be seen that tbe person who.believes be has suffered wrong at tbe bands of tbe assessor or collector can appeal to tbe courts, but be cannot do tbis until be bas taken an intermediate appeal to tbe Commissioner, and, at all events, he is'barred from bringing a suit, unless be does it within a year from tbe time tbe Commissioner is notified of bis appeal. Tbe object of these different provisions is apparent. While tbe Government is desirous to secure tbe citizen a mode of redress against erroneous assessments or collections, it says to him, we want all controverted questions concerning the revenue settled speedily, and, if you have complaint to make, you .must let tbe Commissioner of Internal Revenue know tbe grounds of it; but if be decides against you, or fails to decide at all, you can test the question in tbe courts if you bring your suit within a limited period of time.
These provisions are analogous to those made for tbe benefit of tbe importing merchant, and tbe same results necessarily follow. If tbe importer does not protest, bis right of action is gone. So, if the party complaining of an illegal assessment does not appeal to tbe Commissioner, be is also barred of tbe right to sue, and be is without remedy, even if be does appeal, unless be sues within twelve months. Can it be supposed that Congress, after having carefully constructed a revenue system, with ample provisions to redress wrong, intended to give the tax-payer and importer a further and different remedy ?
.The mischiefs that would result if tbe aggrieved party could disregard tbe provisions in tbe system designed expressly for bis security and benefit, and sue at any time in tbe Court of Claims, forbid tbe idea that Congress intended to allow any other modes to redress a supposed wrong in tbe operation of *43 the revenue laws than such as are particularly given by those i laws.
Without pursuing the subject further, we are satisfied that cases arising under the revenue laws are not within the jurisdiction of .the Court of Claims.
Judgment appirmed.

 But see Brown’s Case (6 C. Cls. R., p. 171) and De Give's Case, post, by which, it appears that no government, where the civil law prevails, is exempt from suit, and that the right of the citizen to bring- such an action nowhere depends upon legislation, but everywhere is regarded as inherent.

 The same remark is made by Mr. Justice Nelson in Adams’ Case, post. But see the Amended Court Claims Act (12 Stat. L., p. 765, § 10) and Wilder’s Case, post.

 But see De Lancey v. The Queen, (6 L. R. Exch., p. 286,) where the action was to recover back an assessment laid on a succession by the commissioners of inland revenue. The Crown pleaded as set-off that the assessment was in fact good and due as oil a legacy, and the court adjudged the case upon the morits.