## Case No. 16,249.

### UNITED STATES v. SEGARS.

[16 Leg. Int. 388; [1] 3 Phila. 517.]

District Court, E. D. Pennsylvania. 1859.

CUSTOMS DUTIES — FORFEITURES — EFFECT OF SEIZURE—INCREASE OF PENALTIES—DELIVERY BOND—PENAL SUM—RECEIPTS.

1. Upon information filed against goods alleged to be forfeited under the revenue collection act of 1799 [1 Stat. 627], and its supplements, the goods pass out of the hands of the collector who seizes them into the hands of the marshal, whose custody is thenceforth that of the court.

2. No penal increase of duties can afterwards be exacted by the collector from a claimant of the goods, though such a penalty might lawfully have been imposed before the goods were seized as forfeited.

3. If such a penal increase has been received by the collector before the seizure, the goods, though they would otherwise have been liable to forfeiture, are exempt from such liability.

4. His exaction of such an increase after information filed, though an illegal act on his part, does not affect the prosecution against the goods.

5. Under proceedings upon a petition of the claimant for the delivery to him of the goods on his giving a bond, with surety, for their appraised value, he is to pay no greater amount of duties than would have been demandable of him if the fairness of the importation had not been impeached.

[Cited in note to U. S. v. Twelve Thousand Three Hundred and Forty-Seven Bags of Sugar, Case No. 16,555.]

6. If the goods are afterwards condemned, he loses the amount of the regular duties thus assessed, as well as the value of the goods forfeited.

[Disapproved in Four Cases of Silk Ribbons, Case No. 4,986. Cited in note to U. S. v. Twelve Thousand Three Hundred and Forty-Seven Bags of Sugar, Id. 16,555.]

7. The bond, in such a case, is a substitute for the proceeds of the goods which, if it had not been given, would have been sold by the marshal.

8. It must, therefore, be given for the market value of the goods at the place of seizure, without any deduction for the regular amount of duties which are thus payable at all events.

[Disapproved in Four Cases of Silk Ribbons, Case No. 4,986.]

9. If, under such a proceeding, the collector and naval officer should refuse to give a receipt, conformably to the act of 1799, for the regular amount of duties, and require the payment of a penal excess, the court will order the delivery of the goods to the claimant upon the execution of the bond, and payment of the proper amount of duties.

10. Where payment of such an excess had been exacted unlawfully by the refusal of such a receipt, and had been made under protest, the goods having been afterwards condemned, and the amount of the bond paid into court, the excess was, by the court's order. repaid to the claimant out of the fund in court.

11. A case in which such a payment has been thus made after information filed, and in the course of a proceeding under the direction and control of the court is not within the statutes and rules of decision applicable to other cases of duties paid under protest.

---

[1] [Reprinted from 16 Leg. Int. 388, by permission.]

Upon a petition of the claimants [Mayoz and others], praying that the segars might be appraised, and delivered to them upon their executing a bond with surety for the amount of the appraisement, a question arose whether the amount of the duties upon the segars was to be deducted by the appraisers from the market value, and the difference to be returned as their valuation, or their appraisement at the market value was to be returned without any such deduction.

CADWALADER, District Judge. The 89th section of the revenue collection act of 1799 provides that when vessels or goods have been seized and prosecuted as forfeited, the court may, upon the prayer of a claimant that they be delivered to him, appoint three sworn appraisers, on the return of whose valuation, if the claimant shall, with one or more approved sureties, execute a bond for the amount of the appraisement, and produce a certificate of the collector and naval officer that the duties have been paid or secured in like manner as if the vessel or goods "had been legally entered" the court shall order the same to be delivered to such claimant. The section provides that the bond shall remain in court, and, upon judgment in favor of the claimant, shall be cancelled, but that if the judgment shall be in whole, or in part, against him, and he shall not, within twenty days thereafter, pay into court the amount of the appraised value of the vessel or goods condemned, with costs, judgment upon the bond may, forthwith, be entered upon motion in court. The 90th and 91st sections enact that vessels and goods condemned for which bond shall not have been given as above shall be sold, under the court's order, by the marshal, and the proceeds, after deducting all proper costs and charges. paid, one moiety to the United States and the other moiety to designated officers of the revenue collection service, with distinct provisions for cases in which there is an informer. The 36th section of this act required the production to the collector and naval officer of the original invoices of the goods imported. The 66th section enacted that if any such goods should be falsely invoiced as to their cost, with design to evade the duties, or any part thereof; the goods, or their value to be recovered of the person making entry, should be forfeited, and that where the collector should suspect the goods to be invoiced below their market value at the place of exportation, he should take possession of them and retain them until their value should be ascertained by appraisement in a prescribed mode, and the duties, according to such valuation, paid, or secured in the manner therein required. The latter provision of the 66th section explains the clause in the 89th section which provides that in a case like the present the amount of duties to be paid by

the claimant is the sum that would have been payable if the property seized had been legally entered. These, which may be called regular duties, are, in the case of goods alleged to be falsely invoiced, the duties which would have been assessed if the fairness of the invoice had not been impeached. Had the 89th section contained no such definition of their amount for a case like the present, the collector and naval officer, instead of assessing, in such a case, the amount of duties that would have been payable according to the invoice, might, as in the case of a suspected invoice, have exacted from the party giving bond the payment of the duty assessed upon a higher valuation. This the 89th section prevents. The present question, however, concerns the regular duties only. The question is whether the amount of these duties, which is to be paid by the claimant at all events, is to be deducted by the appraisers in their ascertainment of the value for which he is to give the bond. The question, in other words, is, whether, if judgment of condemnation be rendered, he is to lose the amount of these duties as well as the value of the property forfeited.

A series of subsequent laws has established a system of appraisement under which all subjects of ad valorem duty are valued by sworn public officers. These laws have imposed, in certain cases, a penal increase of the duties upon important merchandize invoiced at a designated rate below the proper valuation. It is also indictable as a misdemeanor to make out, or pass, or attempt to pass, any false, forged or fraudulent invoice through the custom house. In [Wood v. U. S.] 16 Pet. [41 U. S.] 342, [Taylor v. U. S.] 3 How. [44 U. S.] 197, and [U. S. v. Sixty-Seven Packages of Dry Goods] 17 How. [58 U. S.] 86, the supreme court has decided that these enactments have not impliedly repealed the provision in the 66th section of the act of 1799, that where imported goods are falsely invoiced with a design to evade the payment of any part of the duties, the goods or their value are liable to forfeiture. In the last of these cases the court say that if the additional duty of twenty per cent. imposed when the appraised value exceeds the invoice price by ten per cent. has been levied upon the goods by the government, it cannot forfeit them under the 66th section of the act of 1799, but if the collector is satisfied that such an undervaluation in the invoice has been made with intent to evade the duties, then, instead of levying the additional duty, a forfeiture may be declared. The court added that a forfeiture may be declared in cases of undervaluation of less than ten per cent. of the invoice price where the fraudulent design exists. [U. S. v. Sixty-Seven Packages of Dry Goods] 17 How. [58 U. S.] 93, 94. If the court had been of opinion that no duties whatever could be levied upon forfeited goods, they would not have made this remark distinctly as to the

additional duty alone. The distinction between the additional and the regular duty was recognized conversely in Stairs v. Peaslee, 18 How. [59 U. S.] 529, in certain remarks of the court upon the case of Bartlett v. Kane, 16 How. [57 U. S.] 263. In this case goods entered at the invoice price had been found by the appraisers to be invoiced ten per cent. below the dutiable value. The penal duty of twenty per cent. had therefore been exacted. A portion of the goods were warehoused, and afterwards entered for exportation. On these goods the regular duty was returnable to the importer. But the court was of opinion that the collector could retain the penal duty upon them, which had been levied. The reason of the distinction had been partially indicated in the previous case of McLane v. U. S., 6 Pet. [31 U. S.] 404, 427. There prohibited goods, which could not regularly have become dutiable, were the subject of consideration. The supreme court said that "no duties, as such, can legally accrue upon the importation of prohibited goods," assigning as the reason that "they are not entitled to entry at the custom house." This language implies that the contrary should be the rule as to such forfeited goods as have been or ought to have been entered at the custom house. The liability of the importer for the duties upon goods of the latter class depends upon a personal contract implied in his act of importation. But the implication of such a contract cannot be extended to a penal addition to the duty. It may, for some purposes, be extended so as to include such a simple addition to the invoiced value as the appraisers may make without a penal increase of its amount. But this is not the rule for the purposes of the 89th section of the act of 1799, under which the proper assessment of the duties is upon the invoice as if it were fair and unimpeached. This rule could not here be departed from without prejudging, more or less, the question for ultimate adjudication. A case in which a forfeiture is insisted upon should not be thus prejudged in any degree in a preliminary stage of the proceedings.

The existence and character of the distinction between the additional and the regular duty having been thus ascertained, we may now consider some authorities which bear less indirectly upon the question whether an importer of dutiable goods is liable, personally, for the duties upon them when they are forfeited. Hereafter the word "duties" will be understood as designating what have hitherto been called "regular duties."

Salter v. Malapert, 1 Rolle, 383, was an action of debt for the recovery by farmers of the customs of a statutory duty of twelve pence in the pound for goods imported by foreign merchants and unladen without payment of the duty. The farmers had received the grant of the customs, but not of the forfeitures. These the king had reserved. The

importers had compounded for the forfeiture with the king, and pleaded this in bar of a suit against them by the farmers for the duty. The plaintiffs demurred to the plea. Judgment was given for the plaintiffs. The reason of the judgment, as delivered by Chief Baron Tanfield, was that the duty of a shilling in the pound became a debt upon the bringing of the goods into port, when the plaintiffs acquired a vested right of action. Upon the authority of this decision Chief Baron Comyns (Dig. tit. "Dett.," art. 9), under the head of "debt upon contract implied" states the law to be that debt lies for customs due for merchandize, though the goods are forfeited for nonpayment.

In Swinerton v. Wolstonholme, reported by Sir M. Hale in his Treatise on the Customs (Harg. Law Tracts, 214), the reason upon which the above decision is founded was reconsidered. A majority of the barons of the exchequer were of opinion that the "duties grow due by the unlading." The opinion afterwards entertained in England by the crown lawyers appears to have been that the voluntary bringing of goods within the limits of a port of entry with intent that they shall be unladen renders them liable to duty. Reeves. Shipp. 260, 261. In Meredith v. U. S., 13 Pet. [38 U. S.] 493–496, this rule was recognized as having been established in [U. S. v. Vowell] 5 Cranch [9 U. S.] 368, and [Arnold v. U. S.] 9 Cranch [13 U. S.] 104. The court said that, in a fiscal sense, the right of the government to duties upon goods accrues on their arrival at a port of entry, that, under the credit system then in force, the duty was not extinguished by taking a bond which either did not cover the whole sum due, or was not executed by all the parties liable, and that the amount justly due might be recovered in an action of debt, although no such bond as was then required by law had been given, and might be thus recovered independently of any official or other assessment of the duties. The court said, "An action of debt lies against the importer for the duties whenever by accident, mistake or fraud no duties or short duties have been paid." See, also, U. S. v. Lyman [Case No. 15,647.]

In Wood v. U. S., 16 Pet. [41 U. S.] 362, and Taylor v. U. S., 3 How. [44 U. S.] 197, goods imported at New York, after having been passed, in regular form, through the custom house there, had been seized in the one case at Philadelphia, in the other case at Baltimore, in the hands of agents of the respective importers. The goods, in each case, were condemned as forfeited for fraudulent undervaluation in the invoices upon which they had been entered. These cases decide that the payment by the importer to the United States of the full amount of duties assessed by the collector and naval officer upon goods passed by the appraisers of the customs at the invoiced value; and de-

livered under a formal permit, is no bar to such a subsequent proceeding to forfeit the goods. The success of the fraud by which the officers of the customs had been deceived, was, of course, no justification. The importers, in these cases, lost the goods as well as the amount of the duties which had previously been paid. The 66th section of the act of 1799, under which the goods were condemned, imposes, in the alternative, as we have seen, a forfeiture, either of the goods, or of their value to be recovered of the importer. If those goods, instead of being still in the hands of the importers, or of their own agents, had been previously sold in the market, the pecuniary value could, therefore, have been recovered from the respective importers in actions of debt at the suit of the United States. See Caldwell v. U. S., 8 How. [49 U. S.] 366. The amount of the duties previously paid could not then have been set off as a deduction from the full value which would have been recoverable.

The circumstance that the duties have not been paid when the proceeding to forfeit the goods is instituted is, in reason, attended with no difference in favor of the importer. If the proceeding is groundless, the goods are to be restored to him, but the regular duties are to be paid. If the goods are condemned, he loses them, but this does not exempt him from liability for the duties. In [Meredith v. U. S.] 13 Pet. [38 U. S.] 493, the supreme court cited with approbation, a decision of the English court of exchequer (Anstr. 558), that where a dutiable article was lost or destroyed by a casualty before it became available to the party personally liable for the duty, his liability nevertheless continued. If the loss of the property by misfortune does not exempt him, his loss of it from his own fraud should not cause an exemption. In the present case, if the goods are not bonded, a personal action for the duties will be maintainable against the importer. He could not plead in bar of it that the goods are the subject of a pending prosecution for an alleged forfeiture. He could not have avoided this liability by omitting to claim the goods. He cannot escape from it by withdrawing his claim, or by confessing the forfeiture of the goods or otherwise abandoning them to the United States. The liability for the duties as a debt may thus be enforced as well before as after their condemnation. If the goods are to be delivered to him upon substituting the proposed bond for them, it should be a substitute for their full value, not for the value less the amount of the duties which are, at all events, to be paid. The bond stands in the place of the property which, in case of condemnation, would. if no bond had been given, have been sold by the marshal. Under such a sale by the marshal, the whole proceeds must be paid into the court, if any ques-

tion as to their distribution is to be determined. It may be said that as there was a lien for the duties, they must, if not previously paid, be discharged out of the proceeds when they are thus paid into court. It is true that such a lien exists, and that it may, in case of the importer's insolvency, be the only available security to the United States for the duties. But the existence of such an additional security for them cannot alter the rule of law that the importer of goods which are forfeited or forfeitable is personally liable for the duties.

In Hoyt v. U. S., 10 How. [51 U. S.] 137, goods had under a petition like the present been appraised, and a bond given for the appraised value. They were afterwards condemned whereupon the amount of the bond was paid into court. The collector, naval officer and surveyor were entitled to, and received, one-half of this amount, and the United States the other moiety. The collector, suggesting on behalf of himself and his brother officers, that the amount of the duties on the goods had been deducted from the valuation before the return of the appraisement, and that the sum paid into court was therefore less by that amount than the full value of the forfeited goods, insisted that the duties were a part of the forfeiture, and that their amount should be divided by the United States with the officers. In support of the position thus assumed, it was contended that no duties are demandable upon forfeited goods. The opinion of the court contains an abstract of the relevant provisions of the 89th, 90th, and 91st sections of the act of 1799. The decision was, that when the claimant elects, under their provisions, to give a bond and pay the duties, with a view to the delivery of the vessel or goods to him, "the duties thus paid constitute no part of the proceeds of the goods forfeited." The court in arriving at this conclusion, remarked incidentally that if the vessel or goods are condemned, the claimant "loses as well the duties paid or secured, as the property seized and condemned." This would not be the case if the amount of duties had been deducted by the appraisers from their valuation, before its return to the court. The case might have been adjudged without a decision of this question. But the simplest mode of adjudication was to decide the question; and this mode was adopted. The question, therefore, cannot be considered as an open one. Consequently these goods are to be appraised at their market value here, from which there should be no deduction before the return of the appraisement. If the authorities had not furnished a reason and rule of interpretation of the 89th section of the act of 1799, which seem to be decisive of the question, the words of the section could scarcely have been strained so as to warrant any deduction whatever by the appraisers, from the market value.