## GLENMORE DISTILLERIES CO. v. GLENN.

### Clv. A. No. 1647.

United States District Court
W. D. Kentucky, at Louisville.
Jan. 25, 1950.

J. H. Gold, Louisville, Ky., for plaintiff.

Theron Lamar Caudle, Assistant Attorney General, Andrew D. Sharpe, Harry B. DeAtley, Special Assistants to Attorney General, David C. Walls, United States Attorney, Louisville, Ky., for defendant.

SHELBOURNE, District Judge.

This action was filed by the plaintiff, Glenmore Distilleries Company, April 20, 1949, against the Collector of Internal Revenue for Kentucky, to recover $3,-513.60, with interest from January 6, 1947 and $531 with interest from January 28, 1947.

Said principal amounts represent tax of $9 per gallon on 39 packages of distilled spirits ordered October 31, 1946, by the District Supervisor of the Alcohol Tax Unit at Louisville, Kentucky, to be taxpaid and removed from bond and 5 packages ordered by the same official November 19, 1946, to be taxpaid and removed from bond.

With respect to the 39 packages, the plaintiff complied with the order of tax payment and removal by January 6, 1947, and at that time made application for an official regauge of the contents of each package.

On January 28, 1947, plaintiff withdrew the distilled spirits in the 5 packages ordered to be withdrawn in the letter of November and made application for an official regauge of the contents.

Seasonably, and after payment of the tax, on March 31, 1947, plaintiff filed with the Collector a claim for refund of the taxes paid, which claim was by the Commissioner rejected May 29, 1947.

Plaintiff claims in this action that the loss from the 44 packages, aggregating 449.4 gallons, resulted from leakage and evaporation without the fault or negligence of the distiller of the spirits or of plaintiff as the owner of the internal revenue bonded warehouse in which the packages of distilled spirits were stored and further claims that under the provisions of Section 2901(a) of the Internal Revenue Code, 26 U.S.C.A. § 2901(a), the loss from the packages is allowable and that the District Supervisor and the Bureau of Internal Revenue acted arbitrarily and capriciously in requiring tax payment upon the original contents of the respective packages and that the loss on each and all of said packages was not excessive within the meaning of Section 2880 of the Internal Revenue Code, 26 U.S.C.A. § 2880.

The latter section of the Code is as follows: "If it shall appear at any time that there has been a loss of distilled spirits from any cask or other package deposited in an internal revenue bonded warehouse, other than the loss provided for in section 2901(b), which, in the opinion of the Commissioner, is excessive, he may instruct the District Supervisor of the district in which the loss has occurred to require the withdrawal from warehouse of such distilled spirits, and direct the collector to collect the tax accrued upon the original quantity of distilled spirits entered into the warehouse in such cask or package, notwithstanding that the time specified in any bond given for the withdrawal of the spirits entered into warehouse in such cask or package has not expired. If the said tax is not paid on demand, the collector shall

report the amount due upon his next monthly list, and it shall be assessed and collected as other taxes are assessed and collected."

It will be seen that this section provides that if it appear at any time that there has been a loss of distilled spirits from a cask or other package deposited in an internal revenue bonded warehouse other than the loss provided for in Section 2901(b), which in the opinion of the Commissioner is excessive, the Commissioner may direct the District Supervisor to require an immediate withdrawal from the warehouse of the distilled spirits and direct the Collector to collect the tax upon the original contents of the distilled spirits when entered into the warehouse.

Two conditions must exist to authorize the order of withdrawal and requirement of tax payment, to-wit—

1. The appearance of a loss "other than the loss provided for under Section 2901(b)".

2. The opinion of the Commissioner that such loss is excessive.

Section 2901(b) of the Internal Revenue Code enumerates eight instances in which the Commissioner of Internal Revenue may abate the internal revenue tax accruing on distilled spirits, as follows:

"(1) The distilled spirits were not stolen or intentionally destroyed but were lost, otherwise than by leakage or evaporation, while on the premises of a registered distillery, during or after production and prior to deposit in an internal revenue bonded warehouse.

"(2) The distilled spirits were not stolen or intentionally destroyed but were lost, otherwise than by leakage or evaporation while being transferred between buildings constituting the same internal revenue bonded warehouse or while being transferred by a common carrier from the premises of a registered distillery to an internal revenue bonded warehouse off such distillery premises, or while being transferred by a common carrier between internal revenue bonded warehouses.

"(3) The distilled spirits were not stolen or intentionally destroyed but were lost, otherwise than by leakage or evaporation, while the same remained in an internal revenue bonded warehouse and such loss is not allowable under subsection (a) hereof.

"(4) The distilled spirits were withdrawn for use in the fortification of sweet wines and were not stolen or intentionally destroyed but were lost, otherwise than by leakage or evaporation, prior to such use while being transferred to, or while stored in, the fortifying room on the bonded winery premises.

"(5) The distilled spirits were lost by theft from the premises of a registered distillery, or while being transferred between buildings, constituting the same internal revenue bonded warehouse or while being transferred by common carrier to an internal revenue bonded warehouse off such registered distillery premises, or while being transferred by a common carrier between internal revenue bonded warehouses, and that such loss did not occur as the result of connivance, collusion, fraud, or negligence on the part of the distiller, owner, consignor, consignee, bailee, or carrier, or the employees of any of them.

"(6) The distilled spirits were lost by theft from an internal revenue bonded warehouse, and that such loss did not occur as the result of connivance, collusion, fraud, or negligence on the part of the distiller, owner, or warehouseman, or the employees of any of them.

"(7) The distilled spirits were withdrawn for use in fortification of sweet wines and were lost by theft prior to such use while being transferred to, or while stored in, the fortifying room on the bonded winery premises, and that such loss did not occur as the result of connivance, collusion, fraud, or negligence on the part of the distiller, owner, consignor, consignee, bailee, or carrier, or the employees of any of them.

"(8) The distilled spirits were unfit for use for beverage purposes and were voluntarily destroyed by the distiller, the warehouseman, or the proprietor of the bonded winery premises, pursuant to the written permission of the Commissioner in each case and under regulations which the Com-

missioner, with the approval of the Secretary, is hereby authorized to promulgate."

Sections 2880 and 2901 of the Internal Revenue Code originally appeared as Sections 4 and 17 respectively of the Act of May 28, 1880, Chap. 108, 21 Stat. 145, which was introduced in Congress as H. R. 4812, by the late John G. Carlisle of Kentucky. Section 2901(a), which was Section 17 of the Act of May 28, 1880, has come to be known as the "Carlisle Allowance Table."

The proceedings recorded in the Congressional Record of May 28, 1880, at page 2840 of Part 3, Volume 10, indicate that our Statute is in effect the same as the English Statute, 23 Victoria, Chap. 12, Section 7, known as "Warehousing of British Spirits Act" enacted in 1864.

The case is now before the Court upon defendant's motion for summary judgment, to which is appended affidavits from which it appears that the order requiring the tax payment on the original contents and immediate removal from bond of the distilled spirits in the packages, referred to in plaintiff's complaint, was the result of an investigation of charges against five employees of plaintiff resulting in the conclusion that the 44 packages bore evidence of having been tampered with, the evidence of tampering being chisel and punch marks on and around the bung holes and loose bungs and the arrest and conviction of some of plaintiff's warehouse employees, at least two of whom, when arrested, had concealed on their persons, a rubber hot water bottle containing approximately two-fifths wine gallons of distilled spirits.

The counter-affidavits filed by plaintiff on defendant's motion for summary judgment may be summarized by a statement appearing in the affidavit of William J. Riley, in charge of withdrawing and taxpaying distilled spirits stored in internal revenue bonded warehouse #24. Mr. Riley says an examination of all of the barrels in question shows some had marks of "some sort" around the bungs, and that a few had battered bungs, and that he has read copies of the reports of the storekeeper-gaugers attached to the affidavit of Harry E. Bruder and from the reports and from the condition of the barrels, as viewed by Riley, based upon his seventeen years of experience in withdrawing and taxpaying distilled spirits, he is of the opinion that the loss of the distilled spirits shown in the report was caused by leakage and evaporation.

It is the contention of the plaintiff that Section 2880 provides that if it appears that there has been a loss of distilled spirits at any time from any cask or package deposited in an internal revenue bonded warehouse, which in the opinion of the Commissioner is excessive, he may require the withdrawal of the distilled spirits in the package from the warehouse and cause the Collector to collect, if necessary, by assessment, taxes on the original quantity of distilled spirits originally entered into the warehouse in said cask or package. He also contends in this case that he is entitled to have tried to a jury the question whether the loss from each cask or package was excessive.

In his first contention, he has overlooked one of the conditions in 2880, which is that the loss must be "other than the loss provided for in section 2901(b)".

In his second contention, he overlooks the language of Section 2880, which leaves the determination of whether or not the loss incurred is excessive entirely to the judgment of the Commissioner.

In the case of Crystal Springs Distillery Company v. Cox, 6 Cir., 49 F. 555, 560, the loss did exceed the maximum allowance covered by the Carlisle Allowance Table, then Section 17 of the Act of May 28, 1880. However the Circuit Court said: " * * we do not mean to decide that it was the intention of congress by the fourth section of the act of May 28, 1880 (now section 2880 I.R.C.), to limit and restrict the authority of the commissioners of internal revenue, in requiring the withdrawal of spirits to cases in which the loss is greater than that allowed by the seventeenth section of said act, (2901(a) ), we are of the opinion that, even upon that construction of the two sections, as applied to the present case, the order directing the withdrawal of plaintiff's 108 packages because of ex-

cessive loss therein was clearly within the power and jurisdiction conferred upon the commissioners by and under said fourth section of the act, and that the plaintiff cannot properly claim the benefit of the allowance to the extent provided for in and by the seventeenth section."

The Court further said: " * * * the tax based or 'accrued upon original quantity of distilled spirits entered into the warehouse' is due and payable, without any allowance for diminution in quantity, whenever the commissioner of internal revenue requires its withdrawal because, in his opinion, the loss from the cask or packages is excessive, provided such loss does not come within the provisions of section 3221, Rev. St., above quoted."

In the case of United States v. Witten, 143 U.S. 76, 78, 12 S.Ct. 372, 373, 36 L.Ed. 81, the Supreme Court said: "The deposit of the spirits in the warehouse was solely for the benefit of the distiller, and to enable him to give bond for the payment of the tax on the spirits, instead of paying the tax at once. The government assumed no responsibility to him for their safe-keeping. If he was not satisfied with the security of the warehouse, he had only to take any measure, consistent with the access and supervision of the revenue officers, to make it more secure, or else to pay the tax and remove the spirits. The only duty which the revenue officers owed in regard to the security of the warehouse and the safe-keeping of the spirits therein was to the government, and not to the defendants; and any negligence of those officers gave the defendants no rights against the government, and afforded them no excuse for not performing their obligation according to its terms."

In the case of New England Distillery Company v. United States,[1] decided July 20, 1949, by Judge Ford of the Eastern District of Kentucky, the facts are similar to the facts in the case at bar. There, as here, the Commissioner ordered the removal and tax payment on original contents with respect to 55 packages of distilled spirits. In 33 of the packages the warehouseman conceded the loss to be excessive, because ex-

ceeding losses allowable under the Carlisle Tables, Title 26 U.S.C.A. § 2901(a), but the losses from 22 casks were less than the allowances for leakage and evaporation under the Carlisle Tables and the warehouseman contended the loss was allowable under the Tables.

Motion for summary judgment was granted defendant. The judgment construed Section 2880 as giving no right of refund to a distiller on taxes paid on distilled spirits removed from bond under that section, and that the Commissioner was the sole judge as to the sufficiency of evidence of excessiveness of the loss. There was cited Friedman v. Schwellenbach, 81 U.S. App.D.C. 365, 159 F.2d 22, 25, certiorari denied 330 U.S. 838, 67 S.Ct. 979, 91 L.Ed. 1285, involving a claim by a federal employee, discharged by reason of a determination of the Civil Service Commission that there was reasonable doubt as to the employee's loyalty. The Court there said: "We are not concerned here with the question as to whether Friedman was in fact disloyal. Under the regulation he could be removed from the service if the Commission had a reasonable doubt as to his loyalty. After investigation and patient hearings, the Commission continued, in its opinion, to have a reasonable doubt. In these circumstances the Commission's finding is conclusive." See also Silberschein v. United States, 266 U.S. 221, 45 S.Ct. 69, 69 L.Ed. 256; United States v. Wright, 11 Wall. 648, 78 U.S. 648, 20 L.Ed. 188; Bartlett v. Kane, 16 How. 263, 57 U.S. 263, 14 L.Ed. 931 and United States v. Moorman, 338 U.S. 457, 70 S.Ct. 288.

The plaintiff contends that the loss involved in the case at bar was one "other than the loss provided for in section 2901 (b)". If and when such a loss appears, the Commissioner determines whether that loss is excessive and his opinion in that respect is controlling.

Defendant's motion for a summary judgment is sustained. A judgment so providing and dismissing the complaint with recovery of costs will be tendered by defendant's counsel, with notice to plaintiff.

1. No opinion for publication.