68 U.S. 375
 17 L.Ed. 686
 1 Wall. 375
 IASIGI ET AL.
v.
THE COLLECTOR.
 December Term, 1863
 
 ERROR to the Circuit Court for the District of Massachusetts.
 Iasigi & Goddard imported a cargo of wool from the Cape of Good Hope to Boston, which was invoiced, and, on the 16th March, 1860, entered at a price or value at the place of exportation of less than twenty cents per pound, and hence duty free under the act of 3d March, 1857.[1] Certain packages—the 'examination packages,' as they are called—were examined by the appraisers, and the invoice certified 'Right,' and sent to the collector. All but the examination packages were delivered to the importers under the general bond at once; that is to say, on the day of entry, March 16th; and the examination packages on the next day. Subsequently one of the general appraisers at New York having come to Boston, informed the collector there that there had been 'some neglect,' and in consequence of 'information' now given to him, the collector directed a reappraisement. A certain Crocker, 'one of the principal appraisers of the United States, at the port of Boston,' assisted by Mr. Bausch, a wool examiner, of New York, accordingly, went to work to reappraise the wool. They found it in the warehouse of the importers; and having put the word 'Not' before the word 'Right' on the original invoice, returned it to the collector, with the following direction for reappraisement.
 'Add, to make market value at Port Elizabeth at date of exportation, on 186 bales, three farthings per pound; on 614 bales, 1/2d. per pound.
 CROCKER, Appraiser.'
 This addition brought the wool above twenty cents. A duty was accordingly imposed; and this being approved by the collector, notice was given to the importers of the reappraisement, with a demand for the redelivery of the wool under the bond. The importers declined to redeliver the wool, and having made protest, paid the duty, $16,571. The protest contained sixteen grounds of objection to what was done. Among them were these:
 1. That the appraisement was not made as of the market value of the principal markets of the country from which the wool came (which statute requires it to be).
 2. That it was not made (as statute also requires it to be) as of the date of exportation to the United States; a fact, however, upon which the court did not read the evidence as the counsel did.
 No objection was made, in terms, to the fact that the reappraisement was not made 'by the principal appraisers, or by three merchants;' in which way alone, it was contended, as will be seen hereafter, by the counsel of the importers, that it should have been made. But the protest did set forth and object that the appraisement was 'unauthorized by law and illegal in form and substance,' and that it was made 'under the influence, direction and dictation of a person not holding the office of an appraiser for the port of Boston or any other port, and who was not authorized by law to make any examination of the merchandise, or to make and direct any appraisement thereof.'
 Suit having been brought against the collector to recover the duties paid to him under protest, the court instructed the jury that, on the whole case, the plaintiffs were not entitled to recover; and the correctness of this instruction was the question on error here.
 
 Mr. S. Bartlett, for the importers:
 
 1. The first question raised is, whether, when an appraisement has been once made, and the merchandise surrendered to the importer, it can, in absence of fraud, afterwards, and for an indefinite time, be again subjected to appraisement, and the duties increased or levied anew?
 The act of Congress of August 30, 1842,[2] providing revenue from imports, enacts that,
 'It shall be lawful for the appraisers or the collector to call before them, and examine upon oath or affirmation, any importer or other person touching any matter or thing which they may deem material in ascertaining the true market value, or wholesale price, of any merchandise imported, and to require the production, on oath or affirmation, of any letters, accounts, or invoices in his possession relating to the same.'
 This court, in commenting on the effect of an appraisement, after citing a former case, has said as follows:[3]
 'The appraisers are appointed with powers, by all reasonable ways and means, to appraise, estimate, and ascertain the true and actual market value and wholesale price of the importation. The exercise of these powers involves knowledge, judgment, and discretion. We hold, as was held in that case, that when power or jurisdiction is delegated to any public officer or tribunal over a subject-matter, and its exercise is confided to his or their discretion, the acts so done are in general binding and valid as to the subject-matter. The only questions which can arise between an individual and the public, or any person, denying their validity, are, power in the officer and fraud in the party. All other questions are settled by the decision made or the act done by the tribunal or officer, whether executive, legislative, judicial, or special, unless an appeal or other revision is provided for by some appellate or supervisory tribunal prescribed by law.'
 So as to all questions of fact, even those which are to be derived from commercial information, this court has said:[4] 'The appraisers are by law the tribunal to determine the question. Their decision is conclusive upon the importer as well as the government.'
 The question, then, arises: Has the law provided for any 'appeal or revision,' at the instance of the collector, and if so, was the provision of law followed, or attempted to be followed, in this case?
 An act of Congress, of May 28, 1830,[5] says as follows:
 'If the collector shall deem any appraisement of goods too low, he shall have power to order a reappraisement, either by the principal appraisers, or by three merchants designated by him for that purpose, who shall be citizens of the United States, and cause the duties to be charged accordingly.'
 But when may he do this? Clearly but upon the return of the appraisers, and before the collector's fiat that all is 'right,' before, in short, a permit and delivery has been made to the importer. Otherwise, and if the right is unlimited in point of time, innocent vendees into whose hands the goods have passed, may be subjected to an unjust levy.
 Again, by the act of Congress last quoted, such new appraisal is to be made 'either by the principal appraisers or by three merchants.' In this case it was done by one appraiser only (Crocker), assisted by an examiner of wool, Bausch, from New York. Consequently, it was not done as the act requires, and was void. If the act of August, 1842, as well as the authorities, did not make it clear that one appraisement, confirmed and acted on, and surrender made of the goods to the importer, is final and conclusive against all parties, yet the entire policy of the revenue acts, sufficiently known without particular citation, which requires prompt action on the part of the importer to have his rights, in case of controversy, settled as against the government before the permit is granted and the property surrendered, demonstrates that nothing is intended to be left for revision or future action. Indeed, any view that should give the collector the right to order reappraisements, except as provided in the act of May 28, 1830, must include the power to exercise such right after duties have been paid and the merchandise distributed for consumption, if haply the collector can find them, as in this case, and of course being unlimited in time, might render the accuracy of such future appraisement wholly precarious.
 2. But even if reappraisement, after permit and delivery, was authorized by law, the defects and irregularities of the reappraisement made in this case, are such that it could not be sustained:
 I. It was not made as of the date of exportation, viz., the period of the ship's sailing, but is of a period twenty-eight days subsequently.
 II. The act of March 3, 1851,[6] enacts that the appraisement shall be made as 'of the actual market value or wholesale price thereof in the principal markets of the country from which the same shall have been imported in the United States.' Now the only return of this reappraisement is on the invoice, and is in these words: 'Add, to make market value at Port Elizabeth at date of exportation.' (Then follows the statement of farthings added.) Now, although the court may not judicially know the fact that there are other ports of exportation in the colony of the Cape of Good Hope, and other principal markets of British Eastern Empire, yet the appraisement itself must clearly show that there are none other than Port Elizabeth, or that the appraisement was made in conformity to the statutes, or it is defective.
 3. Is the plaintiff entitled to redress himself, as he sought below to do, by suit? It will be said on the other side that his remedy was by appeal to 'merchant appraisers,' under the act of 30th August, 1842.[7] That statute, indeed, 'provides that, if the importer shall be dissatisfied with the appraisement, . . . the collector shall select two discreet and experienced merchants to examine and appraise.'
 But the enactment does not apply to this case. For, if the reappraisement was illegal, then only the original appraisement remains, and from that the importer had no occasion to appeal, since it exempted the goods from duty. Independently of which, parties are not bound, in any case of irregular and improper discharge of their functions by appraisers, to make any appeal whatever, even to merchant appraisers. The law gives an appeal, not to correct irregular proceedings, but to correct, if need be, the errors of judgment or estimates of values committed by the original appraisement. In case of irregularities of conduct, all that is required of the importer is to point them out clearly by protest, and then, if not corrected, and he is compelled to pay the duties, he may at once sue the collector. Burgess v. Converse, in the first circuit,[8] is much to this point. Speaking of an appeal to merchant appraisers, Curtis, J., there says: 'I consider the importer entitled to have both proceedings regular, but I do not think he is bound to take an appeal if the government appraisers have not proceeded in conformity with the authority conferred on them by law. In my judgment, he may, and should in such a case, make his protest and stand upon it, as the ground of refusal to pay the increased duty, and in such a case, the collector would not be justified in exacting the increased duty by an illegal assignment. But if he demands a reappraisement, and that is regular, he waives all objections to the first, which is superseded and rendered unimportant by the second.' Mr. Bates, A. G., contra:
 1. There must exist, from a necessary respect to the government's rights, a power in the appraiser to review his appraisement, at least, while the goods remain unsold in the importer's hands. Bartlett v. Kane,[9] in this court, decides that it does exist. That the collector may direct a reappraisement is obvious from the statute of May 28th, 1830, quoted on the other side.
 An appraisement unappealed from is conclusive evidence of the value of the goods. Belcher v. Linn,[10] cited by Mr. Bartlett, decides this. And in the term appraisement is included, of course, reappraisement. This is appraisement. If an importer is dissatisfied with the appraisement, he has his remedy by an appeal to merchant appraisers. What was said on the circuit in Burgess v. Converse, should be received with caution. It was not an opinion on a point arising in the case or essential to its decision; for in that case there had been an appeal. It is a view of the law not sustained by any case in this court, and is irreconcilable with the current of the decisions of this court upon the powers and duties of appraisers, and especially with Belcher v. Linn, the latest. In that case, this court, speaking of appraisers, says this paragraph being quoted also on the other side—that 'the only questions which can arise between an individual and the public, or any person denying their validity (i. e., of their acts), are power in the officer, and fraud in the individual.'[11]
 2. One of the points taken here—the incompetency of the persons who made the reappraisement—is not set forth distinctly and specifically in the protest. Any matter not so set forth will not be heard on suit. The statute of February 25, 1845,[12] enacts:
 'Nor shall any action be maintained against any collector to recover the amount of duties so paid under protest, unless the said protest was made in writing, and signed by the claimant, at or before the payment of the said duties, setting forth distinctly and specifically the grounds of objection to the payment thereof.'
 3. As respects various matters set forth, the answer is the same already made. The report of the appraisers is conclusive, conclusive not only as to the result, the dutiable value of the goods, but also as to all the elements necessary to form this result; conclusive as to what are the principal markets of the country,[13] as to the date of exportation, the market value of the goods, &c. It is a conclusive finding upon all the facts on which the appraisers are obliged to pass, in order to discharge their duty, i. e., to determine the dutiable value of the goods imported and submitted to them. If an importer is not content with the result, or with any detail of their finding, or with their conduct in any respect, his sole and his sufficient remedy is by an appeal to merchant appraisers in the mode pointed out by the statute. If he does not avail himself of the right of appeal, he has no reason to complain that the government exacts the duties assessed on his goods. His refusal to appeal indicates that in his opinion the appraisement is substantially correct, and that he must rest his claim to recover the duties solely on technical grounds.
 Mr. Justice NELSON, after stating the chief facts, delivered the opinion of the court:
 
 
 1
 The only question of any difficulty in the case, is whether or not the collector has the power to order a reappraisement of goods imported, after one appraisement, and permit of delivery to the importer, and the actual delivery of the same?
 
 
 2
 The act of 2d May, 1830, authorizes the collector to order a reappraisement, either by the principal appraisers or by three merchants, &c. The board of officers to make the examination and appraisal of the goods imported may have been changed, but this power of the collector remains unaltered.
 
 
 3
 It is true, that the appraisal and ascertainment of the dutiable value of the goods are made final and conclusive both upon the importer and the government. But the question still remains, what appraisal or ascertainment of the value is to be regarded as final? It is admitted, if the appraisal was infected with fraud or imposition, it could not be, and the collector would not only be justified, but it would be his duty to order reappraisement, even under the circumstances in which the present one was made.
 
 
 4
 The interest of the government, as well as a proper regard for the rights of the honest importer, require it. And it seems to us but reasonable, if, from neglect or want of proper evidence or information, on the part of the appraisers, the appraisal be under the proper dutiable value, this power of the collector should be permitted to correct the error. It is true, the exercise of it is usually, and doubtless with few exceptions, previous to the permit to deliver the goods; and must be so, generally, in order to be effective. But the act of Congress conferring the power on the collector, fixes no limit to the period within which it may be exercised, and we think a reasonable discretion should be allowed him.
 
 
 5
 We see no hardship to the importers in giving a liberal interpretation to this power; for, in practice and in point of fact, the permit his become more a matter of form than of substance. The bulk of the goods are usually delivered in the hands of the importer on their arrival, and previous to the permit under the delivery bond; and though, as a mere question of law, the collector doubtless possesses the power to recall the goods, yet he usually looks to the bond for the security of the duties.
 
 
 6
 It is not denied but that the goods found in the warehouse of the importer and reappraised were the same that had been entered at the customs, and from which packages had been selected for examination, and we think it would be too limited and rigorous a construction of the power of the collector to hold that, under the circumstances of the case, he was not authorized to make the order complained of. If the goods had passed beyond the reach of the collector, a different question might have been presented. We express no opinion upon such a case.
 
 
 7
 It has been argued that the reappraisal was not made by the proper officers. The answer is, that, although the protest is quite voluminous, this objection is not specified. If it had been, it doubtless would have been answered by the proofs.
 
 
 8
 It is further argued, that the appraisal was not made as of the market value of the principal markets of the country from whence the wool was imported. The answer is, the appraisement is conclusive upon this fact, and the court cannot go behind it. The remedy is an appeal by the importers to the merchant appraisers.
 
 
 9
 It is further said, the date of the period of exportation was not the time adopted by the appraisers in ascertaining the dutiable value. This is a misapprehension. The report of the appraisers, indorsed on the invoice, confines the appraisal at date of exportation.
 
 
 10
 JUDGMENT AFFIRMED.
 
 
 
 [1]
 11 Stat. at Large, 194.
 
 
 [2]
 § 17; 5 Stat. at Large, 564.
 
 
 [3]
 Belcher v. Linn, 24 Howard, 508-522; citing Bartlett v. Kane, 16 Id., 272.
 
 
 [4]
 Stairs v. Peaslee, 18 Howard, 522-527. See, also, Rankin v. Hoyt, 4 Id., 327-335; Burgess v. Converse, 2 Curtis, 216-221.
 
 
 [5]
 § 2; 4 Stat. at Large, 409.
 
 
 [6]
 § 1; 9 Stat. at Large, 629.
 
 
 [7]
 § 17; 5 Stat. at Large, 564; slightly modified by act of 3d March, 1851, § 3.
 
 
 [8]
 2 Curtis, 216-220.
 
 
 [9]
 16 Howard, 263.
 
 
 [10]
 24 Id., 516.
 
 
 [11]
 And see Rankin v. Hoyt, 4 Id., 327; Greely v. Thompson, 10 Id., 225; Bartlett v. Kane, 16 Id., 268; Stairs v. Peaslee, 18 Id., 524; Sampson v. Peaslee, 20 Id., 571.
 
 
 [12]
 5 Stat. at Large, 727.
 
 
 [13]
 Stairs v. Peaslee, 18 Howard, 524.