UNITED STATES *v.* LENG.

*District Court, S. D. New York.* August 23, 1883.)

1. CUSTOMS DUTIES—RELIQUIDATION—ACT JUNE 22, 1874, § 21—LIMITATION.
    Section 21 of the act of June 22, 1874, (1 Supp. Rev. St. 81,) is in the nature of a statute of limitations, as respects the government's right to reliquidate duties, and limits this right, if the duties have been paid, to one year after entry, in the absence of fraud or protest, and any such reliquidation after that period is void; but if such reliquidation be lawfully made within the year, the statute is not a limitation upon a suit to collect the duties accordingly, and such suit may be brought at any time afterwards.
2. SAME—"ABSENCE OF PROTEST."
    The words "in the absence of protest" mean the absence of any existing protest pending and in force at the time of the reliquidation, not a protest which has become spent through a previous liquidation of duties in accordance with it.

3. SAME—APPEALS TO SECRETARY OF TREASURY.

The collector is the special statutory officer for the liquidation of duties in the first instance; and the secretary of the treasury's jurisdiction of any particular liquidation is appellate only.

4. SAME—REV. ST. § 2931.

The hearing and decision of appeals under section 2931 by the secretary of the treasury is a *quasi* judicial proceeding before a special statutory officer or tribunal; and their effect is to be determined by the rules ordinarily applicable to such tribunals.

5. SAME—REVERSING SECRETARY'S DECISION.

The decision upon such an appeal, when promulgated by the secretary's order and acted on by a subsequent reliquidation of duties accordingly, is "final and conclusive" upon the government, and cannot be lawfully recalled by the secretary, and reversed or modified, either as a part of the same proceeding on appeal, or collaterally by any independent order. Section 2931, in enacting that his decision shall be "final and conclusive," enacts the rule ordinarily applicable to such decisions, and is intended to bind the government as in appraisals of value under section 2930.

6. SAME—ACT OF MARCH 3, 1875.

The act of March 3, 1875, does not authorize a reliquidation against the importer, in the absence of any pending protest and appeal, except for errors arising solely on matters of fact, and not for an erroneous construction of the tariff law or classification of goods.

7. SAME—CASE STATED.

Where, in January, February, and April, 1880, three entries on importations were made, and the estimated duties paid at the time of entry, but the duties were liquidated at a larger sum, which, on appeal to the secretary, was set aside, and the importer's classification sustained, and the duties paid accordingly; and afterwards the secretary gave a contrary order to the collector, who again, in April, 1881, reliquidated the duties according to his first liquidation, and the government thereupon sued for the excess,—*held*, that the payment of the duties upon the first two entries had become a binding settlement by the lapse of a year before the last liquidation under the act of 1874, but not as to the third entry; *held, also*, as respects the third entry, that the decision on appeal in favor of the importer, under section 2931, was binding and conclusive upon the government, and that the subsequent order of the secretary and the last liquidation were invalid and void.

Motion for judgment upon a verdict directed in favor of the plaintiff, subject to the opinion of the court. The action was brought to recover an alleged balance of duties due to the government upon three importations by the defendant, in 1880, of "iron tank-plates, punched and cut ready for use." The three entries were made, respectively, January 30th, February 16th, and April 10th. The goods were entered by the defendant as "manufactures of iron not otherwise provided for," and subject to estimated duties amounting, respectively, to $1,927.45, $1,348.55, and $1,835.05, which sums were paid to the collector for duties on the day of entry in each case; and the goods were at the same time delivered to the importer. The collector, in his first liquidation of the duties upon these importations, assessed them as "boiler or other plate iron," which is subject to a higher rate of duty. Upon due protest and appeal by the defendant, the secretary of the treasury, by order of November 23, 1880, reversed the classification and assessment of the collector, and sustained the position of the importer; and, in accordance with this decision and order, the duties were reliquidated by the collector in Jan-

uary, 1881, at the amounts deposited and paid by the importer upon the original entries, with the exception of $11.90, which it is claimed was immediately paid by the importer. Thereafter, on the twenty-fourth of February, 1881, the secretary made a further order, contrary to his previous decision in favor of the importer, and directed another reliquidation in accordance with the collector's original assessment and liquidation; and under this last order the duties were again liquidated by thé collector on the third of March, 1881, amounting to $4,015.83 in excess of the amount previously liquidated and paid, to recover which this suit was brought, with interest to the time of trial, amounting to $301.17; and a verdict was thereupon directed for the aggregate sum of $4,317, subject to the opinion of the court, with leave to either party to file a bill of exceptions, to which direction the defendant excepted.

*William C. Wallace,* Asst. Dist. Atty., for the United States.

*Scudder & Carter,* for defendant.

BROWN, J. The small balance of $11.90, which, upon the re-liquidation in January, 1881, after the original decision of the secretary of the treasury, was found not to have been covered by the deposit at the time of the original entry, must, I think, be assumed to have been paid in January, 1881, before the date of the last re-liquidation. It was proved that the money was given by the defendant to his custom-house broker for the purpose of payment, and the latter testified to his belief that he did pay it; and on the trial it was not understood that any question was made upon this point. Upon the facts, therefore, admitted or proved, it appears that after due protest and appeal to the secretary of the treasury from the original liquidation of the collector, pursuant to section 2931, the secretary's decision thereupon had been communicated to the collector by a formal order, and acted upon by a reliquidation of the duties in conformity therewith, and by payment and settlement of the duties in accordance with the secretary's decision. The third liquidation, namely, that of March 3, 1881, based upon the subsequent order of the secretary of the treasury, of February 24, 1881, was made more than a year after the entries upon the first two importations, and was, therefore, in my judgment, unauthorized and void, under the act of June 22, 1874. By section 21 of that act, (1 Supp. Rev. St. 81,) it is enacted that—

" Whenever duties upon any imported goods shall have been liquidated and paid, and such goods shall have been delivered to the owner, such *settlement* of duties shall, after the expiration of one year from the *time of entry,* in the absence of fraud, and in the absence of protest by the owner, be final and conclusive upon all parties."

This statute is binding upon the government, (*U. S.* v. *Phelps,* 17 Blatchf. 316;) so that after one year from the date of entry, no previous settlement of the duties, in the absence of fraud or protest, can be

overturned by means of a reliquidation, or otherwise. It is not claimed that there was any fraud in this case; nor at the expiration of the year from the date of entry, or at the time of the last reliquidation on March 3, 1881, was there any existing protest. By the words "in the absence of protest," the statute means the absence of any existing protest pending and in force at the expiration of the year or at the date of the proposed reliquidation; that is, a protest upon which proceedings are then pending, or which may serve as the basis of some future appeal to the secretary, or of some suit in the courts.

In this case, after the secretary's first decision, and the reliquidation made under it, in accordance with the defendant's protest and appeal, no further protest or appeal, either to the secretary or to the courts, was taken, or could be legally taken, by the defendant, because that decision had sustained all the defendant's claim as set forth in his protest; and by section 2931 that decision incontestably became "final and conclusive" upon him. The former protest was, therefore, wholly spent; so that at the expiration of the year from the date of entry, there was no protest which had any vitality, or which could by any possibility become the basis of any further proceedings. It had been completely disposed of by the secretary's decision and order sustaining it, and by the reliquidation under that order, and the settlement and payment made in accordance with it. The first two entries, therefore, come within the limitation of this section, and the subsequent reliquidation of March 3d, as respects them, was unauthorized and void upon this ground.

The third entry, that of April 10, 1880, was less than a year prior to the reliquidation of March 3, 1881, upon which the present suit is based. This action, however, was not commenced until August following, which was more than a year from the date of entry. If section 21 above quoted is interpreted as being strictly a statute of limitations, restricting the commencement of *suits* to one year after the date of entry, then this action would be barred as respects the third entry also. I do not think, however, that was the intention, or would be the proper construction, of this section. As was said in *U. S.* v. *Campbell*, 10 FED. REP. 822, the statute is in the nature of a statute of limitations, as respects the remedy of the government by reliquidation, and limits that remedy, after settlement, to one year from the date of entry; but the statute makes no reference to the commencement of suits; it declares only "that such entry and passage free of duty, and such *settlement* of duties, shall    *    *    *    be final and conclusive upon all parties;" this is, if no proceeding be taken by either party to avoid the effect of "such settlement of duties," the settlement so made shall, after one year, in the absence of fraud or protest, be final and conclusive. Until the lapse of a year such settlement of duties is not binding or conclusive. A reliquidation is the first step in the collection of additional duties, and in preventing

the prior settlement from becoming binding and conclusive upon the government. Such reliquidation, therefore, if lawfully made within the year, vacates and annuls the former "settlement," and hence the statute no longer applies. If a higher duty be thereby assessed, a valid obligation of the importer to the United States becomes thereby legally ascertained and fixed by the collector, as the tribunal authorized to determine it, (13 How. 488;) and upon this obligation, thus fixed and determined within the year, I think the government may sue at any time afterwards. *U. S.* v. *Comarota,* 2 FED. REP. 145. The defense based upon section 21 of the act of 1874, therefore, fails, in my judgment, as respects the entry of April 10, 1880.

It is necessary, therefore, to consider, as respects the third entry, the validity of the liquidation of March 3d, based upon the order of the secretary of the treasury made February 24, 1881, contrary to his decision upon the importer's appeal, and his order announcing that decision made in November preceding.

The order of February 24th was not itself put in evidence, so that it does not appear whether that order was intended to be made as a part of the appellate proceeding under section 2931, or under some other general or particular authority of the secretary of the treasury. The absence of the order is not, however, very material, as I am satisfied that the decision on appeal, after it had been once duly made and promulgated by the secretary's order, and acted on by a reliquidation of duties accordingly, could (1) neither be set aside collaterally by any subsequent and independent order, nor (2) recalled and reversed as a part of the appellate proceeding.

1. There can be no question, as it seems to me, that the secretary, in hearing appeals under section 2931, acts as a special statutory tribunal, of a *quasi* judicial character, for the determination of the questions brought before him in accordance with the provisions of that section, and that such was the intention of the statute. Under his general powers he is not a liquidating officer, and though he may make rulings and give a construction to the tariff laws binding upon his subordinates, (section 2652,) he is not authorized to assess duties upon particular importations, because that duty is specially charged upon the collector, (sections 2621, 2930,) and the statute makes the collector's decision final and conclusive upon the importer, unless an appeal be duly taken. It is only by virtue of such an appeal that the secretary acquires jurisdiction of that proceeding. The hearing before him is, therefore, purely appellate; and his jurisdiction and powers in deciding this appeal do not differ from those which any other person would have who was appointed by statute to determine it. The hearing is based upon specific exceptions stated in the protest and appeal, which are required by statute to "set forth distinctly and specifically the grounds of objection" to the collector's decision. The questions presented are mainly judicial in their character, and relate to the construction of the tariff law, the classification of goods and the rate of duty,—all questions

as to value merely having been previously determined, (section 2930,) —and the decision of the appeal is made "final and conclusive," save only the provision for a suit by the importer in the circuit court.

These features show that the appellate proceedings must be classed with those of a *quasi* judicial character before a special statutory officer or tribunal; and their force, except as otherwise prescribed by statute, must therefore be construed according to the law applicable to such tribunals. In the case of *Lawrence* v. *Caswell*, 13 How. 488, TANEY, C. J., referring to the collector's decision, says:

"Where no protest is made, the duties are not illegally exacted in the legal sense of the term, * * * but paid in obedience to the decision of the tribunal to which the law has confided the power of deciding the question." *Nichols* v. *U. S.* 7 Wall. 127; *U. S.* v. *Campbell*, 10 FED. REP. 819.

The general rules of law applicable to the determinations of such special tribunals are well settled. Except as otherwise provided by statute, their decisions are binding and conclusive adjudications upon all the parties to the proceeding, like the judgment of a court of record; and this is so independent of any express statutory provision making them final. When a statute creates a special tribunal to determine a class of questions, it is a necessary implication that the determinations are intended to have force and validity, otherwise the whole proceeding would be vain and useless, (*Tappan* v. *U. S.* 2 Mason, 404; *Rankin* v. *Hoyt*, 4 How. 335;) and to give them validity at all, there is no alternative but to make them final, except with such limitations as the statute itself prescribes.

"It is a universal principle," says BALDWIN, J., in *U. S.* v. *Arredondo*, 6 Pet. 729, "that when power or jurisdiction is delegated to any public officer or tribunal over a subject-matter, and its exercise is confided to his or their discretion, the acts so done are binding and valid as to the subject-matter, and individual rights will not be disturbed collaterally for anything done in the exercise of that discretion within the authority and power conferred. The only questions which can arise between an individual claiming a right under the acts done and the public, or any person denying its validity, are power in the officer and fraud in the party. All other questions are settled by the decision made or the act done by the tribunal or officer, whether executive, legislative, judicial, or special, unless an appeal is provided for, or other revision by some appellate or supervising tribunal is prescribed by law."

This expression of the law has been repeatedly affirmed by the supreme court as applied to appraisements of value for the purpose of assessing duties. *Bartlett* v. *Kane*, 16 How. 263; *Belcher* v. *Linn*, 24 How. 522. Section 2931, in declaring that the secretary's decision shall be "final and conclusive," only enacts expressly the ordinary rule of law applicable to such tribunals. The government, moreover, is plainly a party to the proceeding. The whole controversy is between the government and the importer or owner, as appellant. By the ordinary rule, therefore, as well as by the language of section 2931, the government, as a party to the proceeding, is bound by the decision.

For the plaintiff it is contended that the words "final and conclusive" should be applied only to the importer or owner, and not be construed to bind the government; and the construction given to the same words in the preceding part of the same section, as to the effect of the collector's decision, is appealed to in support of that contention. But the two clauses are not similar. The collector's decision is declared to be "final and conclusive" only "as to all persons interested in the goods;" and a reference to prior statutes shows conclusively that only the owner, importer, etc., are referred to by the words "persons interested in the goods," (see Act of March 3, 1857, § 5; 11 St. at Large, 195,) and that those words are not intended to include the United States. It is by reason of this very limitation, and the statutory expression of the limited effect of the collector's decision, that his decision is held not to prevent a subsequent liquidation. *U. S.* v. *Phelps*, 17 Blatchf. 312, 316. But there is no such limitation of the effect of the decision of the secretary of the treasury on appeal. It is made "final and conclusive," without qualification, (except in a particular suit,) and without being restricted, like the collector's decision, to one of the parties only; and it must, therefore, be held to be binding on both parties alike,—*i. e.*, upon the government as well as the importer,—subject only to the qualification stated.

The clause in the statute next following the words "final and conclusive," viz., "and the goods shall be liable to duty or exempted therefrom *accordingly*," further shows the intention that the decision shall be binding on the government as well as on the importer; and this intention is indicated still more emphatically by the additional language of the original acts from which the revision is made, which declare that "the goods shall be liable to duty or exempted therefrom accordingly, any act of congress to the contrary notwithstanding,"— Act of March 3, 1857, § 5, (11 St. at Large, 195;) Act of June 30, 1864, § 14, (13 St. at Large, 214,)—that is, no matter what other statute or apparent powers might seem to authorize a different or further determination, the secretary's decision on appeal shall stand as the final determination of the amount of duty payable, except only such further determination as may be had in a suit brought as there prescribed. Per BLATCHFORD, J., in *U. S.* v. *Cousinery*, 7 Ben. 255, approved by the chief justice in *Watt* v. *U. S.* 15 Blatchf. 33. In omitting the last clause in the Revision, it is not to be supposed that congress intended any change in the effect of the secretary's decision on appeal.

However extensive may be the general powers of the secretary of the treasury, in his superintendence of the collection of the revenue, (sections 248, 249, 251, 2652,) they cannot authorize any acts in conflict with the particular provisions of section 2931, or with the binding effect of his decision on appeal, as prescribed by that section and the general rules of law. The goods could not be "liable to duty *ac-*

*cordingly,*" *i. e.*, according to his decision upon the appeal, and not otherwise, "any act of congress to the contrary notwithstanding," if he might lawfully direct a different duty to be assessed through any subsequent and independent order.

Considering, moreover, that the decision of the appeal is committed to the head of the treasury department; that the government is thereby in a sense the judge in its own case; that the secretary, in the performance of his duties, is aided by permanent and learned experts in the interpretation of the tariff laws, and in guarding the interests of the revenue; and that in practice, by reason of the importer's subsequent right of suit, every doubt on the hearing is resolved in favor of the government,—it would seem irrational and extraordinary if the decision of such a tribunal, the highest officer in the department and the special guardian of the revenue, should have no binding force on the government itself.

Under section 2930 the decision of the merchant appraisers on appeal, or, if they do not agree, then the decision of the collector, as to the value of the goods, is in like manner declared to be "final." The United States, though not named, are, nevertheless, held to be bound by the decision equally with the importer, so that the valuation as thus fixed cannot be again inquired into, either by the secretary or by the courts, in any subsequent suit. *Tucker* v. *Kane,* Taney, Dec. 146; *Stairs* v. *Peaslee,* 18 How. 521, 527; *Iasigi* v. *The Collector,* 1 Wall. 375, 383; *Tappan* v. *U. S.* 2 Mason, 398; *Morris* v. *Maxwell,* 3 Blatchf. 143; *Wills* v. *Russell,* 1 Holmes, 228. The provisions of section 2931, and of the acts of 1851 and 1864, above quoted, are more emphatic as to the finality of the secretary's decision than those of section 2930, as to the appraiser's decision on appeal, and I can perceive no reason why the former should not be held to be as binding upon the government as the latter.

The only later statute to which I have been referred as authority for any subsequent order for the re-examination or reliquidation of the duties is the act of March 3, 1875, (1 Supp. Rev. St. 172.) The first proviso of section 1 of that act provides that the secretary may authorize a re-examination and reliquidation whenever he "shall be of opinion that such duties have been assessed and collected under an erroneous view of the facts in the case, and make such *refund* in accordance with existing laws as the facts so ascertained shall, in his opinion, justify; but no such reliquidation shall be allowed, unless protest and appeal shall have been made as required by law."

The title of the act, the context of the proviso, and the express prohibition of any such reliquidation, "unless protest and appeal shall have been made, as required by law," show conclusively that no "re-examination and reliquidation," in the interest of the government, are designed or authorized by this proviso; but only a reliquidation demanded by and for the benefit of the importer or owner. This proviso, therefore, cannot apply to a case like this, where an

appeal has been previously decided in favor of the importer, and a reliquidation made by the collector in accordance with the decision and with the importer's claim; both because no further re-examination or reliquidation is demanded by the importer, and because there is no protest and appeal from the last liquidation, which is the only remaining assessment of duties said to be erroneous, and which it is proposed to correct; whereas the proviso expressly requires such a protest and appeal as a condition of the secretary's right to take further action. This proviso, moreover, manifestly has no reference to a direct review by the secretary himself of his own previous decision, as to the principle of classification, in favor of the importer, and as a part of his proceedings upon a protest and appeal under section 2931.

The third proviso of the same section of the act of 1875, relating to the correction of errors "arising solely upon errors of fact," does not purport to enlarge the secretary's former powers; it has no reference to the secretary's authority to review his own decisions in proceedings brought before him upon protest and appeal under section 2931; nor can it apply at all to this case, which depends upon the construction of different sections of the tariff act as to classification, and not upon any errors in liquidation "arising solely from errors of fact."

For the above reasons it must be held that the decision on appeal, under section 2931, is a binding adjudication upon the government, and cannot be disregarded or set aside by any subsequent independent order, nor collaterally attacked or reversed, except by suit, as provided by that section.

2. It remains to consider what is the decision on appeal which, by section 2931, is made "final and conclusive;" and whether, aside from the act of 1875, which I have said does not affect it, when once rendered, it can be recalled, reviewed, and reversed as a part of the same appellate proceeding. A similar question in regard to the action of the permanent appraisers was considered in *Iasigi* v. *The Collector*, 1 Wall. 375, 383. But the act of 1830 (Rev. St. § 2929) expressly authorizes the collector to direct a reappraisement, if dissatisfied with the appraiser's report; and in view of that act, and of the liability of the appraisers to mistake through the lack of information, and of the interests of the government, it was held that the appraisers, upon the collector's request, might, within a reasonable time, reconsider their report. In *Bartlett* v. *Kane*, 16 How. 263, it was also held that after an appeal had been taken to the merchant appraisers, but before it had been acted on, the permanent appraisers might further consider their valuation and require the production of papers relating thereto. But neither this reappraisement by the original appraisers, sustained by express statutory authority, nor the reliquidation which the collector may also make, under the express statutory limitation of the effect of his original liquidation, afford any support to a direct review and reversal of the decision on appeal

because such a review in the latter proceeding has no such statutory basis or authority. The very language of the statute, making the decision "final and conclusive," would seem of itself to forbid any such review; for so long as any such right of review exists at the option of the secretary, surely the decision made on appeal is not "final and conclusive;" and if he may recall and reverse it once, he may do so indefinitely, until cut off by the act of 1874 above cited. The effect of such a rule would be that the decision on appeal would have no quality of finality whatever, and the language of the statute would be set at naught.

If the analogy of appeals to the merchant appraisers be considered, it has never been held, so far as I can learn, that the report of the latter, after it has been rendered and the duties liquidated accordingly, could be recalled and modified. No statute countenances such a proceeding, and all the decisions above quoted, holding the report final as to the valuation, imply the contrary.

In the absence of any statutory power to recall and review his decision, the same rule must apply to the decisions of the secretary of the treasury under section 2931. So long as the appellate proceedings are pending before him and remain in his hands, any decision arrived at is, of course, inchoate only; but when this decision has been promulgated by order and sent back to the collector, and, as in this case, acted upon by a reliquidation of the duties accordingly, then, if ever, the decision becomes "final and conclusive," and cannot be reviewed or set aside by him, nor be otherwise reversed than in the suit authorized by section 2931.

This, again, is in conformity with the general rule of law on this subject applicable to special statutory tribunals. By the general rule such tribunals, when they have once rendered their decisions, become *functus officio* as to the particular proceeding, and having no longer any jurisdiction of it, cannot recall or reverse their decision.

The subject has often arisen in the courts of this state in reference to various special statutory tribunals of a *quasi* judicial character, and the decisions are all to the above effect.

In the case of *Jermaine* v. *Waggener*, 1 Hill, 279, where canal commissioners were authorized to adopt a plan for the construction of the Crooked Lake canal, and the commissioners, having adopted such plan pursuant to statute, undertook to modify it by the allowance of a substitute for a portion of it, the court held that their latter acts were null and void. The court (COWEN, J.) says, (p. 284:) "The commissioners having once passed upon the question, their powers were at an end. These powers were *quasi* judicial. The adoption of a specific plan was but another name for the rendition of a judgment by a court of limited jurisdiction. Such a step is, in its nature, irrevocable, and incapable of modification." It was claimed that third persons should be protected who had acted under the new directions of the commissioners, but the court say, (p. 285:)

"That rule certainly cannot apply to a case where the judicial body is limited to a single act, and has become *functus officio* by its performance. Jurisdiction over the subject-matter thus ceases, and must be regarded, for all purposes, as if it never existed."

The principle is the same although the board be a permanent one, to hear appeals of a certain class, where its jurisdiction is plainly special and limited.

In the case of *Woolsey* v. *Tompkins*, 23 Wend. 324, where the judges of the court of common pleas sat as an appellate court to review the proceedings of commissioners in laying out highways, NELSON, J., says, (p. 327:) "The reversal of the order of the commissioners and determination to lay out the road were *quasi* judicial acts, and *could not be reviewed or altered by the judges;*" though it was held that they might amend clerical mistakes in the record of their proceedings.

The rule has been applied in the case of assessors undertaking to change assessments, (*Clark* v. *Norton*, 58 Barb. 434;) to the action of a board of supervisors upon reapportioning taxes, (see *People* v. *Bd. Sup'rs Co. of Schenectady*, 35 Barb. 408, where POTTER, J., in his opinion, reviews most of the authorities in this state;) to the marine court of this city, as an inferior court, and its inability to vacate its own judgments, (*Martin* v. *The Mayor, etc.*, 20 How. Pr. 86; *The People, etc.*, v. *The Marine Court*, 12 Wend. 220;) to a referee's changing his report after it is once signed and declared, (*Ayrault* v. *Sackett*, 17 How. Pr. 507;) and to a rehearing by a justice of the peace, (*People* v. *Lynde*, 8 Cow. 133.)

These decisions do not rest upon any statutory provision making the action or decision of such special tribunals "final and conclusive." They all proceed upon an inherent want of power in such tribunals to recall or modify their judgments when once made and declared; because, having performed their statutory duty, they lose jurisdiction of the subject-matter, and are *functus officio*.

The appellate jurisdiction of the secretary of the treasury under section 2931 is of the same special, statutory, and limited character; like that of the judges of the common pleas over commissioners of highways, in the case of *Woolsey* v. *Tompkins*, above cited, or such as the judges of the supreme court in this state were formerly supposed to exercise over the commissioners of real estate and assessment or taking land for streets in the city of New York. So long as it was held that the judges of the supreme court, in reviewing such proceedings, did not act as the supreme court of the constitution, but only as commissioners of review, under a special statutory power, it was held that these judges could not recall or change a decision once made by them. *Matter of the Mayor, etc.*, 6 Cow. 571; *In re Mount Morris Square*, 2 Hill, 14.

Even the United States courts, it is held, have no power, in the absence of statutory provisions, to review or annul their own final decrees after the expiration of the term at which they are rendered.

In *Martin* v. *Hunter's Lessee*, 1 Wheat. 355, the court say: "A final judgment of this court is supposed to be conclusive upon the rights which it decides, and no statute has provided any process by which this court can revise its own judgments." *Schell* v. *Dodge*, 2 Sup. Ct. Rep. 830; *U. S.* v. *Millinger*, 7 FED. REP. 187; S. C. 19 Blatchf. 202. District courts sitting in admiralty cannot set aside their own decrees, except as expressly authorized. *The Illinois*, 1 Brown, Adm. 13.

The general principles of law applicable to special statutory tribunals, the uniform course of decision as to the binding character of their determinations collaterally, and their inability directly to recall, review, or reverse them, except as specially authorized by law, are in accord with what seems to me to be also the language and the intent of section 2931 as to the binding character of the secretary's decision on appeal, upon both the government and the importer; and it follows, therefore, that judgment should be ordered for the defendant.